IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:11-CV-85-FL

| | |
|---|---|
| COLEMAN PULLEY, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-34, DE-39] pursuant to Fed. R. Civ. P. 12(c). Claimant Coleman Pulley ("Claimant") filed this action pursuant to 42 U.S.C. § 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for SSI on 23 July 2008, alleging disability beginning 15 June 2005. (R. 10). His claim was denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 25 May 2010, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 19-36). On 24 June 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 7-18). On 24

March 2011, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

2

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(2).

In this case, Claimant alleges the ALJ improperly assessed Claimant's credibility. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 1, 8. Claimant argues further that there is new and material evidence that should be incorporated into the record and considered by the ALJ on remand pursuant to sentence six of 42 U.S.C. § 405(g). *Id.* at 11.

## FACTUAL HISTORY

### I.     ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

3

disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 12). Next, the ALJ determined Claimant had the following severe impairments: diabetes mellitus and alcoholism. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in his activities of daily living and moderate difficulties in social functioning and concentration, persistence and pace with no episodes of decompensation. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] requiring no exposure to unprotected heights, no moving machinery, no climbing ladders and only occasional stair climbing and balancing. (R. 15). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. *Id.*

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 17). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## II.     Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was fifty-one years old and

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, s/he can also do sedentary and light work. 20 C.F.R. § 416.967(c).

unemployed. (R. 23). Claimant attained a ninth grade education but is unable to read and write. (R. 26). Claimant was last employed in 2008, harvesting tobacco and cucumbers. (R. 24-25).

Claimant testified that while he does not consider himself an alcoholic, "other people" think otherwise. (R. 27). On an average day, Claimant drinks "about a beer," but on a "good day, about a 12-pack" of beer as well as liquor and a pint of wine. (R. 27-28). Claimant testified a "good day" occurs approximately twice a week "when [his] friends buy [alcohol] for him." (R. 28). On a "bad day," Claimant does not drink because he cannot afford it. (R. 29).

Claimant testified he cannot work due to dizziness and weakness – symptoms associated with his uncontrolled blood sugar levels. (R. 25, 30). Claimant experiences dizziness when he bends over to pick up items. (R. 31). Claimant takes his medications as prescribed. (R. 31). Claimant follows diet recommendations "[a] little bit" and in particular, now only drinks diet sodas and only eats baked food as opposed to fried. (R. 31). However, despite Claimant's change in diet, he continues to feel dizzy and weak.

Claimant spends his days napping and sleeping and goes outside "about twice a day." (R. 29). Claimant testified he cannot do "much lifting" and cannot handle a job requiring him to be on his feet all day. (R. 25). Claimant initially testified to performing "odd-job" or "handyman" work "once a week." (R. 24-25, 30). Claimant later clarified this work is limited to mowing lawns with a riding lawnmower once a week. (R. 30). Claimant testified however the he is unable to mow without stopping three to four times to rest. (R. 30).

### III. Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 19, 32-34). After the VE's testimony regarding Claimant's past work experience (R. 32-33), the ALJ asked the VE to

5

assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed four hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform medium work with nonexertional limitations that include no climbing ladders, no more than occasional climbing stairs and balancing and no exposure to hazards such as unprotected heights or moving dangerous machinery. (R. 33). The VE testified in the negative but stated the hypothetical individual could perform the following representative jobs: (1) washer (DOT #599.687-030); (2) cleaner, hospital (DOT #323.687-010); and (3) dining room attendant (DOT #311.677-018). *Id.* Next, the ALJ asked whether the hypothetical individual could perform the above jobs if that individual were functionally illiterate, to which the VE responded in the affirmative. (R. 34). Third, the ALJ asked whether jobs existed for a hypothetical individual with the same non-exertional limitations as those identified in the first hypothetical but with a limitation to light work. *Id.* The VE testified the following jobs would be available: (1) cleaner, housekeeping (DOT #323.687-014); (2) photocopy machine operator (DOT #207.685-014); and (3) parking lot attendant (DOT #915.473-010). *Id.* Finally, the ALJ asked whether jobs would be available if the individual in the second hypothetical had periods of weakness related to uncontrolled diabetes and would need to leave the work area one to two times a week. *Id.* The VE testified such absenteeism would not be tolerated in the unskilled job market. *Id.*

## DISCUSSION

### I.   The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ failed to properly assess Claimant's credibility. Pl.'s Mem. at 13. Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for

6

the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

Here, the ALJ's decision indicates she considered Claimant's numerous subjective complaints associated with his impairments, including dizziness, numbness in his feet, intermittent shooting pains and weakness in his lower extremities, low back pain and fatigue. (R. 12, 15). The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's

subjective symptoms but concluded Claimant's subjective complaints were not fully credible. (R. 15). In reaching this conclusion, the ALJ noted the following: (1) the contradiction between Claimant's testimony that he is not an alcoholic and his statement to state agency consultative examiner, Marcos Caceres, M.D., that he had been an alcoholic all his life; (2) the contradiction between Claimant's testimony that he no longer uses drugs and a June 2009 urine drug test which was positive for marijuana and cocaine; (3) objective medical evidence, including Claimant's ability to perform squatting, heel/toe and tandem walk, his full range of motion in all four extremities, the lack of restrictions on his activities by treating sources, and Claimant's ability to perform "odd jobs and seasonal farm work," including his ability to mow grass with a riding lawnmower; and (4) Claimant's "lack of consistency in medical follow-up," "medication noncompliance despite being furnished pharmaceutical samples" and "his long lapse without seeking medical treatment." (R. 15-16). Claimant faults the ALJ's analysis, contending she either ignored evidence or improperly considered it.

First, Claimant contends the ALJ failed to properly consider Claimant's inability to afford medications as a mitigating factor when assessing his credibility. Pl.'s Mem. at 8. An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to . . . pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits . . . ." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *23, 1996 WL 374186, at *8. The inability to afford medical treatment is a sufficient reason for infrequent medical visits. *Id.*, 1996 SSR LEXIS 4, at *23, 1996 WL 374186, at *8. *Id.*; *see also Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (holding it was improper to consider a disability claimant's failure to seek treatment in

8

determining whether an impairment was severe when the failure was justified by lack of funds).

Here, the ALJ explicitly acknowledged statements by Claimant to treating sources that he is noncompliant with his medications due to financial difficulties, in conformity with S.S.R. 97-6p. (R. 12, 209, 256, 291, 348, 352, 355, 383). However, the ALJ noted further that

> the claimant has received diabetic teaching, and instructions in proper insulin injection therapy. He was furnished a glucose monitor and testing strips. In addition, the claimant has been furnished pharmaceutical samples for all his prescribed medications when available. He was encouraged to complete necessary forms for pharmaceutical assistance, however, the record does not reflect that he ever completed or turned in the paperwork. Records show the claimant's efforts to comply have been inconsistent as he had [] multiple "now show" appointments for routine follow-up or medication refill. Treatment notes frequently reflect his return to the clinic after being off his medications for weeks. The record does not demonstrate that the claimant was ever turned away from care due to his financial position.

(R. 13, 256, 258, 255, 347-49, 351-53, 357-58, 360-361, 383). Indeed, the overwhelming weight of the record shows that Claimant had access to both medical treatment and medication. *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (explaining no error by ALJ in finding claimant not credible despite claim of inability to afford medical treatment where claimant was found to have access to medical attention and little difficulty in obtaining medication). In particular, over the course of the relevant time period, Claimant received treatment from Rural Health Group ("RHG") on eight occasions between 13 January 2009 and 28 April 2010, in addition to emergency department treatment. (R. 256, 346, 348, 352, 355, 357, 360, 383). As stated by the ALJ, records from RHG indicate Claimant was encouraged to follow-up without concern for financial coverage (R. 256). Indeed, on 6 March 2009, Claimant was advised "if he runs out of meds and [is] unable to return he can get 1 month refill and make appt." (R. 357). On 20 March 2009, it was noted that Claimant "has been given samples for the last 2-3 months" yet remained noncompliant. (R. 355). On 4

9

August 2009, it was noted that Claimant returns "every 2-3 months being off medication [and] ask[s] for samples then state[s] he will try and get prescription medications but never picks up meds." (R. 348). On 25 August 2009, Claimant was encouraged to contact RHG for medication samples as it was clear he would run out of medication prior to the next scheduled appointment. (R. 347). However, Claimant did not return for a follow-up until 28 April 2010, over eight months later, where it was noted Claimant had not taken any medication. (R. 383). Based on the above, the ALJ properly relied, in part, on Claimant's failure to take advantage of free medical assistance in finding Claimant less than fully credible. *See Roten v. Astrue*, 2011 U.S. Dist. LEXIS 113963, at \*15-\*16, 2011 WL 4596148, at \*6 (W.D.N.C. Mar. 31, 2011), adopted, 2011 U.S. Dist. LEXIS 114055, 2011 WL 4596129 (W.D.N.C., Sept. 30, 2011) (finding ALJ's credibility analysis supported by substantial evidence, which included the lack of evidence that claimant "took advantage of free clinic assistance or low cost treatment services").

Next, Claimant contends the ALJ erred in finding his credibility lacking "because he was able to perform jobs that required significant physical work." Pl.'s Mem. at 9. In particular, Claimant contends the ALJ "grossly distorts" the nature of Claimant's yard work and assistance "on a neighbor's farm," neither of which is "as labor-intensive as described by the ALJ." *Id.* Claimant's argument is overstated. In evaluating Claimant's allegations of weakness and the impact thereof on his ability to stand and walk, the ALJ noted numerous reasons indicating Claimant's allegations of functional restrictions were not fully credible. (R. 16). In particular, the ALJ noted the following: (1) findings by Dr. Caceres, including Claimant's ability to "walk without assistance, perform squatting, heel/toe and tandem walk," and his full range of motion in all four extremities with adequate muscle tone (R. 181-82); (2) Claimant's statement to Dr. Caceres that he can walk one mile

10

and Claimant's testimony that he is able to mow the grass with a riding lawnmower and venture outside twice a day (R. 29-30, 181); (3) the fact Claimant's treating physicians have placed no restrictions on his activities; (4) Claimant's failure to take advantage of diabetic education and dietary teachings, the provision of diabetic testing supplies at no cost to him and Claimant's admission that he does not check his blood sugar; and (5) Claimant's employment "doing odd jobs and seasonal farm work," which includes harvesting tobacco and cucumbers. (R. 16). When considered in context, it is clear the ALJ's determination that Claimant can perform "significant physical work activity" is supported by the objective medical evidence as well as Claimant's testimony. Claimant's argument is simply a request for the court to reweigh the evidence. However, the court's duty is to determine if substantial evidence supports the ALJ's conclusions – not to reweigh conflicting evidence. *See Mastro*, 270 F.3d at 176 (citation omitted).

Finally, Claimant argues the ALJ erred in considering Claimant's alcohol dependency in evaluating his credibility. Pl.'s Mem. at 10. In particular, Claimant contends "[i]t is inappropriate to consider the claimant's alcohol dependancy unless the ALJ determines that the alcohol use is material to the disability." *Id.* (citing *McGhee v. Barnhart*, 366 F. Supp. 2d 379, 389 (W.D. Va. 2005)). Claimant argues further that it "was entirely inappropriate and against the regulations for [the ALJ] to impliedly base her credibility determination upon her thinly veiled contempt for [Claimant's] alcohol dependency issues." *Id.* Claimant confuses the rules and regulations governing credibility determinations with those governing the receipt of benefits to claimant's suffering from alcoholism or drug addiction.

Under the regulations, if the ALJ finds that a claimant is disabled and there is "medical evidence of [his] drug addiction or alcoholism," then the ALJ should determine whether the claimant

11

"would still [be found] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 416.935; *see* 42 U.S.C. § 423(d)(2)(C)( "An individual shall not be considered to be disabled for . . . if alcoholism or drug abuse would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."). If the claimant would no longer be disabled if he stopped drinking or using drugs, the alcohol or drug addiction is a contributing factor material to the finding of disability, and the claimant is not entitled to benefits. *Id.* As the court in *McGhee* explained, "if, and only if, <u>an ALJ finds a claimant disabled under the five-step disability inquiry</u>, should the ALJ evaluate whether the claimant would still be disabled if he or she stopped using drugs or alcohol." *McGhee*, 366 F. Supp. 2d at 389 (emphasis added).

Here, as Claimant concedes, "[a]t not point does [the ALJ] claim that [Claimant's] alcoholism is [a] material [factor]." Pl.'s Mem. at 10. More importantly, the ALJ did not find Claimant disabled and accordingly, the ALJ was not required to determine whether Claimant's alcoholism was a contributing material factor. *See McGhee*, 366 F. Supp. 2d at 389. Rather, in evaluating Claimant's credibility, the ALJ noted Claimant made inconsistent or contradictory statements about his alcohol and drug use. In particular, while Claimant advised Dr. Caceres in September 2008 that Claimant had been an alcoholic most of his life and stopped using marijuana and cocaine approximately three years prior, Claimant testified at the administrative hearing that he did not believe he was an alcoholic and a June 2009 urine drug screen indicated Claimant continued using both marijuana and cocaine. (R. 15-16, 27, 180, 323). Accordingly, the ALJ properly relied, in part, on the above statements in finding Claimant not fully credible.

It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record.

12

*See Mickles*, 29 F.3d at 929 ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). To the extent that the ALJ detailed the relevant facts underlying his finding that Claimant's testimony was not fully credible, his credibility finding is entitled to substantial deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Here, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176. For the foregoing reasons, Claimant's argument as to this issue is without merit.

## II. This case should not be remanded under sentence six of 42 U.S.C. § 405(g) for consideration of additional evidence.

Claimant urges this court to remand this case under sentence six in order for the ALJ to consider evidence not previously presented to the ALJ or the Appeals Council. Pl.'s Mem. at 1, 11; [DE-35.1].

When a claimant submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior

proceeding." *Id.* Under sentence-six, "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is <u>new</u> evidence which is <u>material</u> and that there is <u>good cause</u> for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added); *see also Nuckles v. Astrue*, No. 7:09-CV-13-FL, 2009 U.S. Dist. LEXIS 93520, at *12, 2009 WL 3208685, at *4 (E.D.N.C. 5 Oct. 2009) (explaining a sentence six remand requires the evidence be new and material and there must be good cause for failing to submit the evidence earlier).

Evidence is new if it is not duplicative or cumulative of that which is already contained in the record. *Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (citations omitted). Evidence is material if it relates to the period on or before the date of the ALJ's decision, 20 C.F.R. § 416.1470(b), and there is a "reasonable possibility that the new evidence would have changed the outcome" of the case. *Wilkins*, 953 F.2d at 96 (citing *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)). In this case, the relevant time period extends from 15 June 2005 (Claimant's alleged disability onset date) to 24 June 2010 (the date of the ALJ's decision). (R. 10, 18). Finally, as for good cause, the courts have recognized that in crafting the statute governing remand, it was Congress's intent to permit remand pursuant to sentence six on a very limited basis. *See Rogers v. Barnhart*, 204 F. Supp. 2d 885, 892 (W.D.N.C. 2002) ("'Congress made it unmistakably clear' that it intended to limit remands for 'new evidence.'") (quoting *Melkonyan*, 501 U.S. at 99-100)). Moreover, Claimant bears the burden in proving that the good cause and other requirements of sentence six are met. *Rogers*, 204 F. Supp. 2d at 892.

In this case, Claimant seeks to introduce as new and material evidence the 2 August 2011 SSA Notice of Award, finding Claimant disabled as of December 2010. [DE-35.1 at 1]. Plaintiff

14

Case 4:11-cv-00085-FL   Document 43   Filed 07/26/12   Page 14 of 16

makes no attempt to satisfy the sentence-six requirements, but rather relies solely on the subsequent finding of disability as new and material evidence. *See* Pl.'s Mem. at 12. While Claimant contends "the favorable disability decision was made on the same basis for which he sought disability benefits on his previous application [] and he was approved close in time to his previous denial," the Notice of Award provides no evidentiary basis for its decision. Moreover, "Claimant has not articulated, nor is it apparent, whether the subsequent decision would undermine the decision at issue, since the later decision, with a disability finding six months after the ALJ's instant decision, may actually relate to a deterioration in his condition or some other intervening cause." *Atkinson v. Astrue*, No. 5:10-CV-298-FL, 2011 U.S. Dist. LEXIS 92727, at *54-55, 2011 WL 3664346, at *17 (E.D.N.C. July 20, 2011), adopted, 2011 U.S. Dist. LEXIS 92682, 2011 WL 3664858 (E.D.N.C. Aug 18, 2011); *accord Wood v. Astrue*, No. 4:10-927-CMC-TER, 2011 U.S. Dist. LEXIS 104217, at *7, 2011 WL 4344113, at *2 (D.S.C. Sept. 14, 2011) (holding that a subsequent finding of disability alone does not relieve a claimant of his burden under sentence-six); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 654 (6th Cir. 2009) (explaining a claimant must present the evidence supporting a subsequent disability finding so that a court can determine whether the "new determination might be based on a change in the claimant's condition that occurred after the initial determination or a change in the claimant's circumstances"). Accordingly, Claimant's request for a sentence-six remand based on a subsequent finding of disability, standing alone and without any opportunity to consider the basis for that finding, should be denied as the finding alone does not constitute new evidence. *See Atkinson*, 2011 U.S. Dist. LEXIS 92727, at *55, 2011 WL 3664346, at *17.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment

15

on the Pleadings [DE-34] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-39] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 26th day of July, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge